FILED
2015 Jan-30  PM 03:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| THE ESTATE OF MARY ROGERS, DECEASED, BY AND THROUGH ITS PERSONAL REPRESENTATIVE ARBERDELLA ROGERS,<br><br>Plaintiff;<br><br>vs.<br><br>GLOBE LIFE AND ACCIDENT INSURANCE COMPANY,<br><br>Defendant. | 2:13-cv-02013-LSC |

## MEMORANDUM OF OPINION

Before the Court is Defendant Globe Life and Accident Insurance Company's ("Globe Life") motion for summary judgment (Doc. 18) and the Plaintiff's cross-motion for partial summary judgment. (Doc. 28). Also pending are several motions submitted by the Plaintiff seeking to strike evidence submitted in support of Globe Life's motion for summary judgment (Docs. 12, 22, 23, 24, 26, 27), and one motion to strike filed by Globe Life. (Doc. 36.) For the reasons stated below, both Globe Life's motion for summary judgment and Plaintiff's cross-motion for partial summary judgment are due to be denied.

I.      Background

On May 21, 2009, Globe Life issued an accidental death life insurance policy for the life of Gregory Rogers ("Mr. Rogers"). Benefits were payable to Mr. Rogers' mother, Mary Rogers ("Mary"), "[u]pon receipt of due proof of the Accidental Death of the insured while coverage of such Insured is in force."[1] (Doc. 20-1 at 4.) "Accidental Death" is defined as "[d]eath due to Accidental Bodily Injury caused by an Accident occuring while the insurance is in force." (Doc. 20-1 at 5.) "Accidental Bodily Injury" is defined as "[u]nexpected traumatic damage to the insured's body, of external origin." (*Id.*) An "Accident" is defined as a "fortuitous event, unforeseen and unintended." (*Id.*)

Mr. Rogers was a fifty-one year old male from Pleasant Grove, Alabama who worked as a truck driver. Mr. Rogers suffered from diabetes and hypertension and took medication to control those conditions. On June 25, 2011, Mr. Rogers departed his home, either to go to a club or to meet a friend of his. His family never saw Mr. Rogers alive again.

Mr. Rogers' family, who were close with each other, began to worry when Mr. Rogers did not return their calls the night of June 25. The next day, Mr. Rogers' sister

---

[1] Because of the many individuals in this case with the last name of "Rogers," the members of the Rogers family will be called by their first names in this opinion for ease of identification.

Arberdella Rogers ("Arberdella") began calling Nikki Rogers ("Nikki"), Mr. Rogers' wife, early in the morning. Nikki did not answer, but eventually called and spoke to Mary. That same day, Arberdella and Mary went to Mr. Rogers' home and spoke to Nikki. Nikki reportedly told them that she was unaware if Mr. Rogers had returned home that night, speculated that he had potentially "wandered off" due to his diabetes, and also began to talk about "all these women" that Mr. Rogers was involved with. (Doc. 20-3 at 18.) Mary then asked Nikki if she had reported Mr. Rogers missing, and Nikki said that she had. Arberdella and Mary told Nikki to contact them if she heard from Mr. Rogers, and then left the house to drive around town looking for him.

Nikki had not actually filed a missing persons report for Mr. Rogers, although she had called the police concerning his disappearance. Mary filed a missing person's report with the Pleasant Grove Police Department on June 27, 2011. On June 29, 2011, Mr. Rogers was found deceased on the northbound entrance ramp to I-65 in Chilton County. The second row seats of the truck had been folded back, and his body was wedged between the back of the front seats and the floor in the back of the truck. (Doc. 29-2 at 13.) Mr. Rogers' body was face down, with his knees flexed against the rear passenger door. Several objects were found in the truck, including Mr. Rogers' wallet, his phone, and several handguns that he owned. Two garage door openers were also found in the truck, even though it was Mr. Rogers' customary practice to keep one

garage door opener in his truck and the other in Nikki's car. (Doc. 20-3 at 29.)

Mr. Rogers' body was badly decayed by the time it was found. On June 30, 2011, Dr. Stephen Boudreau ("Dr. Boudreau") performed an autopsy on the body. Dr. Boudreau was unable to determine the specific cause of Mr. Rogers' death due to the advanced state of decomposition at the time of the autopsy. The autopsy revealed no evidence of any injury to Mr. Rogers' body. (Doc. 20-8 at 3.) The autopsy also listed both the cause and manner of his death as "undetermined." (Doc. 20-7 at 2.) Globe Life denied Mary benefits under the insurance policy because it determined that Mr. Rogers' death was not an "accidental death" under the terms of the policy. On August 5, 2014, after speaking with Dr. Boudreau and examining the autopsy report, the Chilton County Coroner Awlahjaday Agee ("Agee") amended Mr. Rogers' death certificate to state that the manner of Mr. Rogers' death was natural causes.

Plaintiff filed suit against Globe Life on September 23, 2013, alleging breach of contract against Globe Life in the Circuit Court of Jefferson County, Alabama. Globe Life removed the case to this Court on November 1, 2013.

II.   Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the

suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a "genuine dispute" as to a material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The trial judge should not weigh the evidence but must simply determine whether there are any genuine issues that should be resolved at trial. *Id.* at 249.

In considering a motion for summary judgment, trial courts must give deference to the non-moving party by "considering all of the evidence and the inferences it may yield in the light most favorable to the nonmoving party." *McGee v. Sentinel Offender Services, LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013) (citing *Ellis v. England*, 432 F. 3d 1321, 1325 (11th Cir. 2005)). In making a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *Id.* Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The fact that there are cross-motions for summary judgment does not change the standard. Even though both sides allege that no genuine issue of material fact exists, the Court must still evaluate each motion under the Rule 56 standard,

determining whether either party has established that it is entitled to judgment as a matter of law. *See Griffis v. Delta Family-Care Disability*, 723 F.2d 822, 824 (11th Cir. 1984). The Court has considered each motion in the light most favorable to the opposing party in order to determine whether the Rule 56 standard has been met. *See Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

III.   Analysis

    A.   Globe Life's Motion for Summary Judgment

Globe Life has moved for summary judgment on Plaintiff's complaint. In a suit on an accidental death policy provision, the "plaintiff has the burden of proving that the death of the insured resulted, 'directly and independently of all other causes, from bodily injuries effected solely through external, violent and accidental means.'" *Nat'l Life & Acc. Ins. Co. v. Allen*, 234 So.2d 567, 572 (Ala. 1970) (quoting *Inter-Ocean Cas. Co. v. Foster*, 147 So. 127 (Ala. 1933)); *see also Roberson v. Gulf Life Ins. Co.*, 655 So.2d 953, 956 (Ala. 1995). A prima facie case is made when the plaintiff shows "(1) the issuance of the policy, (2) death by accidental means and (3) notice to the insurer." *Id.* A certified copy of a death certificate is "presumptive evidence of the facts therein stated. . . ." Ala. Code. § 12-21-101 (1975). However, the plaintiff has a right to contradict the cause of death stated in the death certificate. *Union Central Life Ins. Co. v. Scott*, 236 So.2d 328, 334-34 (Ala. 1970).

In *Allen*, the Alabama Supreme Court held that a plaintiff had failed to submit sufficient evidence to prove that the insured's death was accidental under an accidental death insurance policy. 234 So.2d at 572. The deceased in that case was found by his mother in front of her home, after she went to answer the door bell. *Id.* at 571. There was an abrasion on the side of the deceased's head that was not touching the sidewalk, and fresh blood was found next to his mouth. *Id.* His watch, the day's take from his workplace, the bag of groceries he had purchased minutes before, and his wallet were all missing. *Id.* A detective testified that in his "professional opinion," if the deceased's wallet or the day's take were not on his body when found, "that would indicate foul play." *Id.* The deceased's death certificate showed that an autopsy had been performed and that his death was caused by heart disease. *Id.* at 572. The Alabama Supreme Court determined that there was "no evidence that the insured's death was caused through 'external, violent and accidental means.'" *Id.* Although there was a number of suspicious circumstances surrounding the insured's death, such as the missing items and injuries to his body, there was no actual evidence to show that the death was caused by anything other than natural causes. *Id.* The detective's speculation as to what was indicated by these suspicious circumstances was not sufficient evidence, because "[v]erdicts may not be rested upon pure supposition or speculation, and the jury will not be permitted to merely guess as between a number

of causes. . . ." *Id.* (quoting *Colonial Life & Accident Ins. Co. v. Collins*, 194 So. 2d 532, 537 (Ala. 1967)).

The only question in this case is whether Mr. Rogers died by accidental means under the terms of the insurance policy. Globe Life points to a number of pieces of evidence that indicate that Mr. Rogers died of natural causes, and argues that Plaintiff is therefore excluded from recovering under the policy. This evidence includes the amended death certificate listing Mr. Rogers' manner of death as "natural cause[s]" (Doc. 20-11 at 4), which constitutes prima facie evidence that Mr. Rogers died of natural causes. Globe Life also points to the autopsy performed by Dr. Boudreau (Doc. 20-7) and Dr. Boudreau's declaration (Doc. 20-8), both of which state that no physical injury was found on the body. Dr. Boudreau, who performed the autopsy, and Agee, the coroner who revised Mr. Rogers' death certificate to state that he died of natural causes, indicate that they believe he died of natural causes because there is no medical evidence to indicate that he did not, rather than because they had actually determined Mr. Rogers' specific cause of death. (Doc. 20-10 at 4; Doc. 20-8 at 3.)

In response, Plaintiff points to only two relevant pieces of evidence. Plaintiffs' primary piece of evidence is the opinion of her expert witness, Dr. James Lauridson ("Dr. Lauridson"), a medical doctor and forensic pathologist. Dr. Lauridson stated in his deposition that there "were not any conditions that would cause [Mr. Rogers]

to die suddenly" or over a period of time naturally. (Doc. 39-1 at 5.) In his expert report, he said that the positioning of Mr. Rogers body "required the action of one or more persons," and that therefore "the possibility is strong that other persons contributed to or caused the death of Mr. Rogers." (Doc. 29-2 at 13.) He stated that there was no evidence that Mr. Rogers' death was of natural causes, and that due to the "unusual death scene it is my opinion beyond reasonable medical certainty that the manner of death be considered homicide." (Doc. 29-2 at 13.) The Plaintiff has also included the affidavit of Aberdella, who states that Mr. Rogers and his wife had a rocky relationship; that Mr. Rogers was in the habit of only keeping one garage door opener in his truck, but two opners were found along with Mr. Rogers' body; and that Mr. Rogers did not go south of Birmingham, where his body was found. (Doc. 29-1 at 2.)

Globe Life argues that Dr. Lauridson's opinion testimony is just like the opinion testimony of the detective in *Allen*, which was determined to be insufficient evidence. Like *Allen*, this case presents a situation where the death certificate states that the insured died of natural causes, while the unusual circumstances surrounding the death give rise to the possibility that the death was caused by other means. What makes this case different from *Allen* is that Plaintiff has provided more evidence than simply a set of unusual circumstances surrounding Mr. Rogers' death and a detective's statement concerning possibilities. The Plaintiff has provided the expert opinion of a medical

doctor and forensic pathologist who determined that to a "medical certainty" Mr. Rogers death was not of natural causes but was instead a homicide. (Doc. 29-2 at 13.) Additionally, the death certificate in this case only stated that Mr. Rogers died of "natural causes" rather than providing a specific manner of death, like in *Allen*, because a specific cause of death could not be determined. Rather, a determination was made that due to the absence of evidence that Mr. Rogers died of anything other than natural causes, he was presumed to have died for that reason. (Doc. 20-10 at 3-4.) Both sides have presented differing expert medical opinions as to the cause of Mr. Rogers death—this is enough to create a jury question on the issue of whether Plaintiff is owed money under the accidental death policy. Therefore, Globe Life's motion for summary judgment is due to be denied.

    B.    Plaintiff's Motion for Partial Summary Judgment

Plaintiff has also filed a cross-motion for partial summary judgment. (Doc. 28.) Globe Life filed a Motion to Strike the cross-motion on the grounds that it was filed six days after the dispositive motion deadline in this case. (Doc. 35.) Plaintiff then filed a motion for a retroactive extension of the dispositive motion deadline. (Doc. 38.) For the sake of efficiency, the Court will grant that motion, and take up Plaintiff's motion for partial summary judgment at this time.

Plaintiff argues for summary judgment on only one particular issue: that Globe

Life has failed to prove what Plaintiff calls their "obvious" contention that Mr. Rogers died as a result of failing to take his prescribed medication, because they have failed to provide medical or scientific evidence establishing this as a possible cause of death. (Doc. 29 at 8-10.) Plaintiff therefore argues that if she carries her initial burden at trial of proving that Mr. Rogers' death was "accidental" under the insurance policy, then a verdict should be automatically entered in her favor as Globe Life would be unable to prove its contention that Mr. Rogers died as a result of failing to take his medication. (Doc. 29 at 11.)

However, as correctly pointed out by Globe Life, it has not made the contention that Mr. Rogers' death was caused by failure to take medication. (Doc. 30 at 4.) Globe Life has asserted nothing more than that Mr. Rogers' death was due to natural causes, has provided expert medical testimony that Mr. Rogers died of natural causes, and it is not required to do any more than that. The Court declines to make such a determination as the Plaintiff requests on an argument that Globe Life has not made. Therefore, Plaintiff's cross-motion for partial summary judgment is due to be denied.

    C.    Motions to Strike

        1.    Declaration of Dr. Boudreau and Affidavit of Agee

Plaintiff filed a motion to strike the declaration of Dr. Boudreau and the affidavit of Agee (doc. 22), and Globe Life filed a response to that motion. (Doc. 25.) Plaintiff

then supplemented and amended the original motion (doc. 26), and Globe Life then filed a supplemental response. (Doc. 33.) On summary judgment, a party "may object that the material cited to support or dispute a fact cannot be presented in a form that *would be admissible* in evidence." Fed. R. Civ. P. 56(c)(2). A hearsay statement may be considered "in passing on a motion for summary judgment if the statement could be 'reduced to admissible evidence at trial' or 'reduced to admissible form.'" *Macuba v. Deboer*, 193 F.3d 1316, 1323 (11th Cir. 1999); *see also Rowell v. BellSouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005).

The original motion to strike stated that Globe Life had failed to disclose, in its initial disclosures, its intent to rely upon the testimony of Dr. Boudreau and Agee until it filed the Motion for Summary Judgment, well outside of the applicable limitations for disclosure given in the Courts scheduling order. Plaintiff fails to recognize that she requested that the Court extend the time for expert disclosures (doc. 12), and that the Court did so. Globe Life has submitted evidence that it did indeed disclose its intent to use the testimony of Boudreau and Agee within the revised deadlines. (Doc. 25-1 at 3-5.) Therefore, failure to disclose an intent to rely on the expert testimony of these witnesses is not proper grounds to strike this evidence.

In its amended and supplemented motion to strike, Plaintiff states that paragraph 5 of Agee's affidavit should be stricken since it is based upon inadmissible

hearsay. In that paragraph, Agee states that he "discussed the matter with Dr. Boudreau," and that based "upon my discussion of his findings" and Agee's own review of the autopsy, he decided to amend the death certificate to state that the manner of death was natural causes. (Doc. 20-10 at 3.)

Hearsay is a statement that the "declarant does not make while testifying at the current trial or hearing" and is offered "in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). A statement is "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." Fed. R. Evid. 801(a). In this case, paragraph 5 is not hearsay; Agee is not relaying any statements made by Boudreau during their discussion, but instead stating the opinion that he developed and actions that he took after speaking with Boudreau and performing his own review of the Autopsy Report. Therefore, Plaintiff's motions to strike the declaration of Dr. Boudreau and affidavit of Agee are due to be denied.

2. Amended Death Certificate

Plaintiff has filed both a motion to strike Mr. Rogers' amended death certificate (doc. 23) and an amended motion to strike the amended death certificate. (Doc. 27.) Globe Life has filed a response. (Doc. 34.) Plaintiff argues that the amended death certificate should be struck from the record because she was not notified of Globe Life's intent to rely upon the amended certificate until after the discovery deadline had

passed. Plaintiff also argues that the amended death certificate should be struck because it is based upon inadmissible hearsay, as the coroner who prepared the certificate stated that he amended it after talking to Dr. Boudreau.

As an initial matter, Fed. R. Evid. 803(9) specifically provides that public records of death, if reported to a public office in accordance with a legal duty, are not excluded by the rule against hearsay. Plaintiff points to no reason why the fact that the coroner who prepared the amended death certificate discussed the case with someone else before amending the certificate would make an admissible public record inadmissible, and the Court cannot see one. Therefore, this reason to strike is unavailing.

As to filing after the discovery deadline, Plaintiff has made no argument that she was in any way prejudiced by not being informed of the amended death certificate before the close of discovery. Discovery was due by September 30, 2014. Globe Life included the original death certificate in its initial disclosures to the Plaintiff. The death certificate was then amended on August 5, 2014, and recorded by the Alabama Department of Vital Statistics on August 19, 2014. Globe Life states that they only learned that the death certificate had possibly been amended in early October of 2014, and notified Plaintiff's counsel of that possibility on October 2. Globe Life obtained a copy of the amended certificate on October 9, and provided a copy to Plaintiff's

counsel via email on October 13. (Doc. 34-1.) The amended death certificate was a public record that was equally available to the Plaintiff and Globe Life, and was prepared by the Chilton County coroner, a public official, not by Globe Life. Due to the lack of prejudice, the death certificate's nature as a readily available public record, Globe Life's lack of control over the timing of the amendment, and the speed with which Globe Life informed Plaintiff's counsel of the amended certificate once it discovered it, there is no reason not to consider the amended certificate in ruling on summary judgment. Therefore, the motions to strike the amended death certificate are due to be denied.

### 3. Deposition Testimony of Michael Varden

The Plaintiff has filed a Motion to Strike some of the deposition testimony of Michael Varden (doc. 21), and Globe Life has filed a response. (Doc. 31.) This deposition testimony concerns a witness, Michael Varden, who says that he spoke to Mr. Rogers on the side of the road shortly before Mr. Rogers death. The Plaintiff seeks to strike several statements that it argues are inadmissible hearsay, and also to strike testimony that was elicited during Mr. Varden's deposition by what the Plaintiff states were leading questions. However, it was not necessary for the Court to use this evidence in deciding upon the instant motions for summary judgment. Therefore, this motion is due to be denied as moot.

### 4. Expert Report and Affidavit of Dr. Lauridson

Globe Life has moved to strike the expert report and affidavit of Dr. Lauridson offered by the Plaintiff in opposition to Globe Life's motion for summary judgment. (Doc. 36.) Globe Life argues that the expert report should not be admitted because it is unsworn expert testimony without proper attestation; and that the affidavit should not be admitted because it is a new opinion not disclosed in Dr. Lauridson's expert report. The Plaintiff's response was to argue that this was "nothing more than a technical defense" and submit Dr. Lauridson's deposition testimony in support of his expert opinion report. (Doc. 39.)

In *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003), the Eleventh Circuit addressed an unsworn "preliminary report by [an] expert witness" when reviewing a grant of summary judgment. The court found that the unsworn report was properly excluded, stating that:

> Importantly, the alleged expert's report is unsworn. Only "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits" can be considered by the district court in reviewing a summary judgment motion ... Unsworn statements do not meet the requirements of [Rule 56] and cannot be considered by a district court in ruling on a summary judgment motion. Because the preliminary report was submitted without attestation, it had no probative value. . . .

*Id.* (Internal citations omitted). Under this precedent, "an unsworn opinion can be considered only if there are supporting affidavits, made on personal knowledge, that

'show affirmatively that the affiant is competent to testify to the matters related therein.'" *Southland Health Servs., Inc. v. Bank of Vernon*, 887 F.Supp.2d 1158, 1169 (N.D. Ala. 2012) (quoting Fed. R. Civ. P. 56(c)(4)).

In light of the fact that the Plaintiff has submitted sworn deposition testimony in which Dr. Lauridson has attested to his opinions, this Court will consider his report on summary judgment. Therefore this portion of Globe Life's motion is due to be denied.

Dr. Lauridson's affidavit, on the other hand, is solely concerned with the deposition testimony of Gregory Varden, which was the subject of another motion to strike. Because it was not necessary for the Court to consider that testimony in ruling upon summary judgment, that portion of this motion concerning the related affidavit is due to be denied as moot.

5. Opinion Testimony of Proposed Expert William Gault

Plaintiff has also filed a motion to exclude the testimony of proposed expert William Gault. (Doc. 24.) As correctly pointed out by Globe Life, Gault's testimony was not offered by Globe Life as evidence on summary judgment. (Doc. 32.) Therefore, this motion is due to be denied as moot.

IV. Conclusion

For the foregoing reasons, Globe Life's motion for summary judgment (Doc.

18) is due to be DENIED. Plaintiff's cross-motion for partial summary judgment (Doc. 28) is due to be DENIED. Plaintiff's motions to strike the declaration of Boudreau and the affidavit of Agee (Doc.22, 26) are due to be DENIED. Plaintiff's motions to strike Mr. Rogers' amended death certificate are due to be DENIED. (Doc. 23, 27.) Plaintiff's motion to strike the deposition testimony of Varden is DENIED as moot. (Doc. 21.) Globe Life's motion to strike the expert report and affidavit of Dr. Lauridson is partially DENIED and partially DENIED as moot. (Doc. 36.) Plaintiff's motion to exclude the testimony of proposed witness William Gault is DENIED as moot. (Doc. 24.)

A separate order will be entered.

Done this 30th day of January 2015.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
177825